# EXHIBIT A

## Exhibit A: ESI Protocol

The Parties and their counsel agree to cooperate in good faith to reach agreement on conducting e-discovery throughout the course of the matter. The Parties and their counsel will also take steps to educate themselves so that they can effectively conduct discovery in this matter, including:
   a. Developing familiarity with relevant electronic systems and capabilities (or ensuring reasonable access to those with such familiarity);
   b. Developing knowledge regarding e-discovery efforts;
   c. Developing knowledge about the technical aspects of e-discovery (or ensuring reasonable access to those with such knowledge), including electronic document storage, organization, and format issues;
   d. Preparing to participate in e-discovery dispute resolution.

To facilitate cooperation and support discovery of electronic stored information in this lawsuit, the Parties agree to the following protocols:

1. The Parties agree that preservation of potentially relevant ESI will be reasonable and proportional to what is at issue in the case. (As used herein, "ESI" shall have the same meaning as "electronically stored information" set forth in Fed. R. Civ. P. 34(a).) A Party may use any reasonable steps to preserve documents consistent with the Party's record management systems, routine computer operation, ordinary business practices, and the preservation requirements of this agreement. This agreement does not obligate any Party to segregate or collect potentially relevant documents unless the Party has a reason to anticipate that, absent such actions, relevant information is likely to be lost during the pendency of this matter. The following data sources need not be preserved:
   a. deleted, slack, fragmented, or unallocated data on hard drives (so long as such information was in that state prior to the time document retention obligations arose);
   b. random access memory (RAM) or other ephemeral data;
   c. on-line access data such as temporary internet files, history, cache, or cookies;
   d. automatically saved versions of documents;
   e. system or executable files (.exe, .d11, etc.);
   f. data from smartphone devices (Blackberry, Android, or iPhone, for example) and social media, unless the Party believes, based on its standard practices or actual knowledge, that the information contained on those devices is materially different from information that can be collected from other sources.

2. The Parties agree to take reasonable steps to preserve records in a form that will permit the collection and production of metadata that is necessary to fulfill their agreement on the form of production, set forth below.

3. The Parties agree to conduct all aspects of ESI discovery in a manner that is reasonable and proportional to the needs of the case. The parties agree to discuss search term formulation relating to requests for production of ESI, if necessary.

4. The Parties agree that productions will be made in accordance with good electronic-discovery practice (and typical local practice). The format for electronic discovery will be: Concordance load files with single-page image files (.TIFF or .JPEG) and data files (.DAT and .OPT), or native format, or .PDF format. Load files and extracted text should be produced for .PDF files, as should any available metadata. Natives should be produced for any files, such as Excel files, whose functionality would be materially impaired by creating files as images or .PDFs.

5. A Party is only required to produce a single copy of a responsive document. Parties may globally de-duplicate stand-alone documents or entire document families using hash-value matching (such as MD5 or SHA-1 values). ESI that is not an exact duplicate may not be removed. To the extent the Parties de-duplicate stand-alone electronic documents against an e-mail attachment, the attachment to the e-mail must be the document that is produced.

6. Parent-child relationships (e.g., the association between emails and attachments) will be preserved, and attachments to e-mails will not be eliminated from the parent e-mail. Email attachments will be consecutively produced (and Bates numbered) with the parent email, and families will be associated using attachment range metadata.

7. Parties have no obligation to make non-text-searchable documents text-searchable (by OCR scanning, for example). However, to the extent a Party's documents already exist in text-searchable format independent of this litigation or are being OCR'd for purposes of this litigation, then such documents will be produced in the same text-searchable format at no cost to the receiving Party. The foregoing does not apply to documents a Party receives from any third-parties (*see also* Paragraph 18, below).

8. If a Party converts paper documents into electronic format (which no Party is obligated to do), distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).

9. Pursuant to Fed. R. Evid. 502(d), any Party's production of documents covered by an applicable privilege or protection shall not constitute a waiver of the privilege or protection with respect to those documents or the subject matter of those documents in this case or any other federal or state proceeding, arbitration, or other forum. Nothing in this paragraph shall require a Party to produce documents that are protected from disclosure. This paragraph shall be interpreted to provide the greatest protection allowed by Federal Rule of Evidence 502, or otherwise permitted by law. Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

10. The Parties shall cooperate to exchange complete, accurate information regarding the contents, functioning, reporting capabilities, metadata, and history of modifications (e.g., change or transaction logs) contained in any database that contains information relevant to any claim or defense and responsive to any discovery request. Parties may produce reasonable and sufficient reports/reporting and associated metadata and contextual information, as an alternative to allowing an inspection of and direct access to the native database. The parties will cooperate to facilitate redaction of irrelevant information from any reports generated by a database.

11. Each Party shall bear the costs of production in accordance with this Protocol, subject to (1) any Party's right to seek an order shifting the cost of production to an opposing Party, (*see, e.g.,* Fed. R. Civ. P. 26(c)(1)(B)), and (2) any Party's right to seek recovery of costs pursuant to the Bill of Cost procedure following the proceeding.

12. This Protocol does not address, limit, or determine the relevance, discoverability, or admission into evidence of any ESI or document.  Nor do the Parties waive any objections as to the production, discoverability, or confidentiality of documents subject to this Order.

13. All ESI produced in connection with this action, whether by Parties or non-Parties, shall be subject to the Protective and Confidentiality Order entered by the Court.

14. The Parties shall adhere to the Sedona Principles regarding electronic discovery disputes.

15. Except as otherwise provided in this Protocol, its terms may be amended only by written stipulation of the Parties, to the extent that such amendment does not affect any requirement by the Court, or by order of the Court, on noticed motion, for good cause shown.

16. A producing Party shall not be required to produce the same ESI in more than one format, except as may be required to rectify a deficient production.

17. Any Party serving a *subpoena duces tecum* will take reasonable steps to instruct the subpoena recipient to produce electronic documents in a reasonably useable format, similar to the format set forth herein. Once this Protocol is entered as an Order of this Court, a Party that issues a non-party subpoena (the "Issuing Party") will include a copy of this Stipulated Order with the subpoena, and will request that the non-party produce documents in accordance with the specifications set forth herein. The Issuing Party will produce any documents obtained under a subpoena to all other Parties. No Issuing Party has any obligation to incur expenses in conducting additional processing of documents received in response to a subpoena, prior to producing those documents to other Parties to the lawsuit, other than ensuring that the documents are Bates numbered. Native documents may be Bates numbered by document (or document family), rather than page-by-page. No Issuing Party shall be obligated to produce anything other than the (Bates numbered) documents and other information (such as load files) that it receives from a

subpoena recipient. The Parties may decide to meet and confer regarding cost sharing arrangements related to the additional processing of third-party documents but are under no obligation to do so.

18. Except as specifically set forth herein, nothing in this Protocol shall alter the parties' respective responsibilities to otherwise comply with the applicable Federal Rules of Civil Procedure and any applicable Local Rules regarding the collection or production of ESI.

19. Nothing herein shall preclude or limit a Party from demanding that any other Party fix an earlier production so that it is useable and contains the information envisioned by this Protocol. For example, and without limitation, any Party may seek to have an opposing Party provide: (1) load files needed to associate native documents with Bates numbered placeholders; (2) complete .DAT files that include entries for all documents and complete information (such as Bates numbers) for all documents in the production; (3) complete .OPT files that associate single-page images with the full multi-page original document; and (4) the metadata set forth in this Protocol.